Good morning. Tracy Dressner for Appellant Dennis Jackson. This case is a little unusual. It was the third trial after two earlier trials that ended with a home jury. And the jury, after three and a half days of deliberation, sent in out some questions that indicated that they were struggling with the concept of natural and probable consequences and how that applies to a murder liability. And in this case, it was – there were two different acts that took place. There was a beating of one brother, Jose, and then the beating death of the other brother, Julio. And what was clear from the jury's questions was that they believed that Mr. Jackson was involved in the beating of Jose and not in – and not directly involved in the – in the killing of – in the beating, which resulted in the death of Julio. And their questions indicate that they were trying to figure out how you – how you put those two acts together. And their question was specifically geared to natural – what really was the meaning of natural and probable consequences. And what wasn't conveyed to them was that there because he beat Jose, it had to be – the jury would have to find that it was reasonable – that there was a reasonable foreseeability that the beating of Jose would have led to the beating death of Julio. Ginsburg. But you didn't say subjective. Kagan. Objective. Ginsburg. Objective. Kagan. Objective, yes. And so I think – and instead of addressing the concern about natural and probable consequences, the jury – the court opted to give this instruction in this case. Causation really – it's not a – first of all, it's not a theory of murder liability. And it addresses whether the defendant's actions should be considered the cause of death. And sort of the prime example of that, I think, is say you have a – somebody who makes a nonfatal stab, and the victim goes to the hospital and has surgery, and the doctor's malpractice causes an infection that leads to the person's death. The issue is, well, did the act of the stab cause – set into motion, you know, the guy wouldn't have had the surgery if he hadn't done that. In this case – Kagan. Well, the California courts didn't agree with you on these instructions. Kagan. Well – Kagan. And I think they're wrong. And I think they're objectively wrong. Kagan. Well, there's two issues with that. First, is this just a question of State law? And secondly, why do you think they're wrong? Kagan. Well, first, it's a question of – it's not just a question of State law, because the argument is that the – Kagan. I understand the argument. Why is – why was the State wrong? Kagan. Well, because the only thing that the State said was it found that the jury instructions were – that the language of the Caljug 3.40, which is causation, defeats the claim – defeats the claim because it also addressed natural and probable consequences. But the problem is twofold. The jury was struggling with what the meaning of natural and probable consequences was. And the language of Caljug 3.40, the causation instruction, uses that very same language. Well, you're getting hung up on the word causation, and it talks about an act. And you have to understand that in terms of the context of the case. An act, and they're talking about whether this guy is responsible. That sets in chain a motion of events that produces as a direct natural and probable consequence of the act the death. So that seems to be exactly somewhat a paraphrase of the other instructions that the jury had on natural and probable consequences. I read that as saying what this defendant did has to have been an act that set in motion a chain of events that produces as a direct natural and probable consequence of the act the death. I'm having trouble seeing what the problem with that is. The problem is that the jury telegraphed to the judge that they didn't understand the concept of natural and probable consequences. And the judge told them the defendant has to commit an act that sets in motion a chain of events that produces as a direct natural and probable consequence of the act the death. Which uses the same language that they were having trouble with. And what they never learned was this reasonable foreseeability. Well, wasn't that in the other instructions that they had? It doesn't define reasonable. It doesn't define natural and probable consequences. The instructions, the other instructions were adequate in terms of natural and probable consequences. The California courts have held that natural and probable consequence is equivalent of reasonable foreseeability. However, however, there's two, there's two buts to that. One, subsequent to this case, subsequent to this case, they amended CALJIG 3.02 to actually include the language of reasonable foreseeability. And, in fact, the new CALCRIM instructions, CALCRIM 580, which is also the part of the case. Well, how do new developments help you in this case? Well, because that leads me to my second point, which is maybe in theory that should have been okay, except you have a case where the jury tells you that they're having trouble with it. And when the jury telegraphs that they're having trouble understanding a concept, then the court has a responsibility to do more than just give them a different jury instruction, which, frankly, wasn't applicable in this case, but which actually just reuses the same language that they were having trouble with. And so we need to be careful. Are you referring to 8.55 when you say it wasn't applicable? Which one did you say they didn't use? 3.40, the causation instruction, was not applicable, because the issue – because 3.40 is used when the court has to determine whether the defendant's actions caused the death, not whether it was the defendant who was responsible for the act. And what you have in this case is Mr. Jackson being involved in the beating of Jose, and the jury's – Well, there was some evidence that supports that, but the jury's question – Yeah. There was some evidence that supported that he beat both of them. But the jury's question certainly reflects that they rejected that evidence, because if they were finding that he was directly – Well, I have an awfully hard time finding out what's in the heads of jurors after trying cases for 23 years by either the questions that they ask or what they come down with. I mean, this – well, I won't repeat it. Well, but you have a case – It says that the – in order to – this says to me that in order to convict this guy, he has to be responsible for an act that sets in motion a chain of events that produces a direct, natural, and probable consequence of the act. And that's very similar to the other instruction they already had that was correct. The instruction – but they didn't understand that instruction. I don't know that they didn't understand it. But that's what – How do we know that only one person was asking a question to confirm something that they already thought but weren't sure of? I mean, you try to read things into the minds of jurors, and I tried to do that for 23 years, and it's impossible. Now, all you can say is that the jury deliberated for three and a half days. They gave this question. That doesn't mean anything to me, either. I mean, I saw juries deliberate for 20 minutes. We try to tease out of all of these things as circumstantial evidence things that I just don't think you can get to. And we have the – we have California taking a look at this, their own instructions. They're used to all of this stuff, and they say there's no problem with this. That's the problem I have. If, counsel, if the instruction is correct, if the only failure of the instruction is that this jury, you assume, didn't understand the instruction, but if the instruction is correct, then how would you expect – would you ask us to reverse on that supposition that they may not have understood? Because I'm – What more can we do than correctly instruct? I am – the causation instruction, as it was – as it was given, is a correct recitation of that causation instruction. The causation was not an issue in this case and was inappropriately given. Are you agreeing to 3.40? 3.40. But the – but the issue is even if it's a correct instruction, the jury – Why was it incorrect? Because – Is it incorrect because he didn't do any act on Giulio? Because that – that's the way – Is that why it's incorrect? Yes. Because – Well, but there was evidence that he did act on Giulio. That's right. It's incorrect because then – Isn't – isn't the question – I mean, I'm struggling with this case. I'm not as convinced that just giving the correct instruction in response to a jury question is adequate where there – where it would relieve the government of its burden of proving an element, in this case, causation. But the – isn't the question the jury had to answer was that Giulio's murder was a I think that's the exact question they had to answer. That is exactly – that is exactly right. Now, why couldn't they have concluded that based on the evidence that was there? They might have concluded it, although it was attenuated. And again, I'm operating under the assumption that the jury did not find him directly responsible for the death. If the jury found him directly responsible for the death, then there's no argument here, and I concede that the case is over. But they might have on this evidence. They might have, but you have to operate on what we have, which is three and a half days of deliberation, a question about this, and then a decision 30 minutes later. And that – and so if you operate that the jury was never learned, that it had to be reasonably foreseeable, and I'm not sure that pulling somebody out of a car, whether you believe his self-defense testimony or not, pulling somebody out of the car and beating one person, and then a whole bunch of other people pull out another person and beat that person to death, that you could say it's reasonably foreseeable that if you did, A, the beating of Jose, that that was – that it was objectively reasonable, foreseeable that the other person in the car would get beaten to death. Well, can I – so there is evidence – there was evidence submitted that Jackson participated in the beating of Julio. What do we do with that evidence? We have to understand it in the context that it was questionable. They brought in this witness who after – who never appeared until the third trial and mysteriously appears and gives some evidence, and there was some question about how much she could actually even see from the window. Well, you're asking us to attack now the credibility of a witness. We can't do that as an appellate court. As a matter of fact, counsel, there were two witnesses, not just one. Right. Only one had the tree argument. The other one had no argument against her credibility at all. And both of them knew only the petitioner of all the people that were milling around the street. Both of those women knew only one person there, and that was the petitioner. That – And they said, we knew him well, and we saw him well. And they both said he was pounding first on Jose. When he escaped, he ran over and started beating with a board on Julio. All I can say is that witness was – credibility was questionable. This man had been tried twice before with hung juries with that same witness. That argument completely crashes and burns in habeas in a circuit that's looking at a State court case that had a jury trial. Credibility of witnesses is basically bulletproof once it gets to us, unless the witness said the red elephant was flying across or that Congress did something rational. I mean, credibility is credibility is credibility. We just don't get to that. I'm not arguing credibility. I'm arguing that – But you are, really. Was this – I was asked why – why it – why it wasn't that we don't just accept that there was some evidence that he was involved in the beating of Julio and that's the end of the case. No, not at all. It's just I asked you what act – what act are you focusing on? And you said to me, I'm focusing on not an act of his doing any beating, but the act of his being there while others were doing the beating. That's what you said was the act. His act of being there while others did the beating. That's all. The act of participating in the beating of Jose. Yeah. That's the act you were focusing. That's the whole – the question that the causation instruction told the jury that if he said it into motion, because he was the one who first pulled Jose out. That was – that was – there would have been some taunting, some yelling, and maybe some gang slogans back and forth, but the first physical act that occurred was Mr. Jackson pulling Jose out of the car. So I – And there's a domino effect. If that – But then he attacked – Then he's liable for the domino. Then he personally attacked Julio. I'm sorry? Then he personally attacked Julio, too. There was some evidence that suggests that. The jury questioned. They would not be interested in the natural and probable consequences if they believed that he was directly liable. I wish I could see into what the jury is up to as well as you. I mean, have you ever – I talked to juries for 23 years, and I was never – never not shocked at what I found out. All we know is that one person may have had some questions, and the foreman said, okay, you just don't know what was going on in the jury's mind. But the – even the United States Supreme Court says you look at what effect the answer has on then how quickly the jury comes back with an answer. The jury came back with an answer in 30 minutes. Well, why? Because they took the – Suggested it was one juror that had a question. I mean, what do you know? You don't know. But this answer – but this question, this answer did not address their question. It said you have to have natural and probable consequences, which California tells us is the equivalent of reasonably foreseeable. But which this jury didn't understand and never learned that it was reasonably foreseeable. The words reasonably foreseeable never appeared in this trial, ever. Would that make it more clear to add the words reasonably foreseeable? Yes, absolutely. Absolutely. To me – I'll bet you half of them can't spell foreseeable. I'm sorry? I'll bet you half of them can't spell foreseeable. Well, they may not be able to, but reasonably foreseeable is a concept of do I think – is it just enough that he said it into motion, boy, maybe if he hadn't pulled that guy out of the car, none of this would have happened, versus can you – can you foresee that if you pull somebody out of the car that the other people that you're with are going to pull the other guy out of the car and beat him to death? And those are two very different concepts. And this domino theory, which is really what causation is, it's not a theory of say, wow, that beating a Julio never would have occurred if Mr. Jackson hadn't started all this by pulling Jose out of the car, then you – the jury comes back with a conviction because of this domino theory that really doesn't explain the legal concept of reasonable foreseeability. And I think I've long used up my time, so unless there's more questions. All right. Thank you. You used it well. Thank you. Thank you. Thank you. Good morning, Deputy Attorney General Colleen Seidman for the Respondent. Petitioner's instructional claim is a pure question of state law that does not – which is not cognizable on federal PBS. Well, but if it relieved the government of its obligation to prove an element of the offense, then it does rise to the level of a due process violation, doesn't it? That is correct. But in this case, it did not relieve the government of any responsibility or requirement for proving an element of this case. Why is that? Because, I mean, the thing is, yes, these instructions that were given were technically correct, but this jury obviously didn't understand natural and probable consequence or at least some of them didn't. It only takes one to hang the jury. The jury had been hung twice before. Clearly didn't understand natural and probable consequences. So by reciting natural and probable consequences again, that's not really answering the question. And putting in the set in motion language, that isn't what the government – the government wasn't – had to prove more than set into motion. It had to prove that it was reasonably foreseeable from Jackson's pulling Jose out of the car that Julio would be murdered. So isn't that a different burden of proof? Well, I think the important thing in this case is that the prosecution proceeded under two theories of liability, direct liability and accomplice liability. But did the verdict form reflect that? No, and the verdict form is not required to reflect that. Now, I understand that. I'm just asking, did it reflect that? No, it did not. Okay. But was the jury instructed on both theories? Yes. Okay. So it's clear that the – it's obvious that the jury is required to agree on all the – unanimously agree on all the elements of a crime, which must be proven beyond a reasonable doubt. But rules regarding accomplice liability are not included within the elements of a crime. And so in this case, there was substantial evidence in the form of eyewitness testimony that the petitioner actually was involved in the beating of Julio. And so I think that we can't really, again, try to figure out what the jury was thinking in this case. The jury – all of the jurors could have found that he was directly liable for the crime. Some of them could have found that. But, you know, it didn't really matter in this case. They all reached the unanimous verdict of guilt under one of these two theories. And we just don't know which theory they reached in that. Was somebody else – I know this is outside the record, but I've been curious about this since we're in this case. Was somebody else tried and convicted of the murder of Julio? I believe that there was another defendant in this case. Again, as you said, it's not relevant to the issues in this case. I believe there was a plea bargain or a conviction. I don't know the details of that. Of the actual murder of Julio, one person? I believe so. But, again, I'm not 100 percent sure on that. Okay. So, I mean, clearly this is a question of state law. It's not cognizable on habeas review. With regard to the language of natural and probable versus reasonably foreseeable, under California state law, the terms are interchangeable. They're mere variations of one another. They are interchangeable, except that now we know that some jurors obviously don't quite understand the meaning of the words natural and probable. And so the instruction has been changed to use the words reasonably foreseeable, which for some reason apparently people understand more clearly what that is. Well, and I think that that really isn't relevant for this court of what's happened subsequently. The fact in this case is that the state law is very clear that the terms are interchangeable, and, therefore, the district court's finding that the court of appeals' decision was not unreasonable is proper. For a similar reason, Petitioner's second claim fails. There was no new legal theory raised by these jury instructions. There was simply clarification on an existing theory. Well, what the court of appeals basically is saying is if the jury can ‑‑ and I've been a trial judge. But if the jury comes back and says, you know, we don't understand what natural and probable consequences mean, I would have not given them the same language back to them and also a lesser standard as well. I would have explained it if it was so clear that reasonably foreseeable means the same thing as natural and probable. You'd want to explain it in different language to the jury so that they would understand it. Well, and that may be so, but I think what you need to look at here is whether or not what the court did raised the level of a constitutional violation. In this case, it simply didn't. The instructions were not incorrect. There's no indication that the jury misunderstood the corrections. If the defense counsel sought further clarification on this theory, he obviously could have asked for it, and he simply didn't. So he did ask to reopen the argument. Yes. You said prosecutor. You mean defense attorney? Defense counsel, I apologize. You know, I frankly think the question that the jury asked was answered by what the judge said. Here's the question, number two, okay? And I'm not arguing with you. I'm just talking about the case. Was the crime of murder ‑‑ He's talking to me. I'm talking to her, too, in case she stands up again so she can think about this. Was the crime of murder a natural and probable consequence of the crime of assault? And the judge's answer basically is no. To constitute murder, which directly addresses the question, there must be, in addition to the death of a human being, an unlawful act, which was the cause of that death. And the cause of that death is an act that sets in motion a chain of events that produces as a direct natural and probable consequence of the act. So they say, is murder a natural and probable consequence of assault? The answer is no. In addition, you have to have an act that sets in motion a chain of events that produces a direct natural and probable consequence of the act, the death. I think that's absolutely correct, and it addresses the question. I agree. Now, disagree with me and you'll be in trouble. I absolutely agree. Okay. If there's anything further, I'd like to submit. You may submit. Thank you. Do you want to answer the question? I served that up so that you can answer. Thank you. I appreciate that. First, I wanted to address Judge Wardlaw's question. There were five defendants who pled guilty to voluntary manslaughter in Julio's death. Right. And Mr. Jackson refused to take a plea and went to trial three times on this. We know the cause of death in this case. The cause of death was a group beating. So the question is murder. Does murder naturally become a natural and probable consequence of assault? That's not saying we don't understand natural and probable consequences. That's asking, is murder a natural and probable consequence of assault? And the answer was no. You have to have an act that sets in motion a chain of events that leads to a natural and probable consequence to the death. That I disagree with. The law of natural and probable consequences is you have a target offense. Let's say what typically happens in a gang case is you have the gangs get together. They decide they're going to go assault the other gang member. And then somebody pulls out a knife and somebody ends up dying. Or the beating goes beyond and somebody ends up getting beaten to death. The question is, look, there was no intent that nobody, everyone agrees they were never intending to kill somebody at the beginning. But they were intending to assault. Well, is it naturally, is it reasonably foreseeable, the natural and probable consequences when you assault somebody that it can turn into a murder? And that's exactly what the answer the judge gave said. You have to have an act that sets in chain natural and probable consequences. That's exactly what the judge said. But the problem in this case is we're talking two different assaults. We're talking about an assault of one person, Jose, leading to the death of another person, Julio. Well, they all understood that. Huh? No, they don't. They don't. If you look at the question, the question that was asked. They asked two questions. Right? They asked two questions. One was, are all principals involved in the first incident of assault equally responsible for the second incident of murder, regardless of the level of participation in the murder? An immediately prior. The judge says you've got to do something that's an act that sets in motion a natural and probable consequence of which is the death. But then immediately prior to this question, the day before, they had asked whether they should consider assault and murder as one crime or separate crimes, the assault and the murder. Now, he was charged with assault and murder. So obviously they were confused about assault because this wasn't a straightforward case. If he had beaten Julio, let's say he had beaten Julio initially, and then everyone else kind of jumped in and Julio died, that would be where you'd have a causation issue. Well, he may not have inflicted the fatal hitting with the wooden club or whatever it was that eventually killed him. But you have to say. There's all kinds of causations, you know. What caused the death and who caused it? And the causation 3.40 is only what act caused it. In the California courts, when I cite the cases in my brief. And that's what the jury is asking. Is that act of assault automatically a murder? But they're not asking about the assault on Julio. They're asking about the assault on Jose. And they have to be told. Well, no. The assault on Jose can only be, he can only be on the hook for the murder of Julio if the assault on Jose, it was reasonably foreseeable that the rest of, that the whole rest of the actions were played out. The fact that sets in motion a chain of events that produces as a natural and probable consequence the death of another. But that only explains how somebody could be responsible for murder. It doesn't explain the theory of liability of murder. The theory of liability of murder is aid or in a better liability. And if you don't, and in this case, aid or in a better liability was premised on the natural and probable consequences of an assault. Did the jury have in the jury room all the instructions in this case? Do you know the answer to that? I do not know the answer. I suspect the answer is yes, but I do not know the answer. It's usual. It usually is. The one thing I want to end it with is that the theory, and it sort of ties in a little bit to my second, the second argument that I raised in the brief about them not allowing the reopening of the argument, if you're going to introduce this causation theory, it was new. The prosecutor, if you go back and look at the prosecutor's closing argument, the prosecutor essentially argued this case as a direct assault, a direct liability, that he was directly responsible. There is no ---- Kennedy, that he beat Julio. That he beat Julio. And then he argues sort of a gang, this sort of non-generic, non-legally correct sort of you're in for everything, you know, the gang's doing it, you're responsible for everything. Nowhere in the prosecutor's closing argument or in the prosecutor's rebuttal argument is there any discussion about natural and probable consequences. I have a little section in my brief that says the word probable does not appear anywhere in the argument, the word foreseeable does not appear. The word natural appeared eight times, and it was only in the context of explaining implied malice murder, second-degree implied malice murder. The jury was not ---- the jury obviously, with respect to what I know you're going to come back and say to me, the jury, I am operating under the premise that at least one juror believed that he was not directly responsible. And all we've needed for an outcome, change in outcome, if one juror believed that he wasn't directly responsible and doesn't buy this aid or in a better liability, then we have a third-hung jury. So you have the ---- I forgot what I was saying. The jury never gets any of the ---- other than the instruction on natural and probable consequences. No lawyer argued what natural and probable consequences mean. It doesn't come up in any of the arguments. So then the judge throws out this causation instruction that uses natural and probable consequences again, and then refuses to allow the attorneys to argue what it means. And you know what? If the judge had allowed them to argue, it was a new theory. I don't ---- the State court is absolutely wrong on that. It was a new theory. There is nowhere you'd look back in those closing arguments, there was nothing mentioned about causation, and although the jury was instructed on natural and probable consequences, it was not argued. Didn't the government argue that the defendant directly pounded on Julio with a board? He argued that, and then he also argued even if you don't find that because he was part of the group of people that were doing the beating, he was responsible. And he sort of glossed over any legal argument. But that's what you have the instructions for. The prosecutor isn't supposed to instruct the jury. The judge instructs the jury. Well, but then you have a jury that says I don't understand the instructions, and they get no guidance. They get the same word back again. The same words back again. They didn't say we don't understand the instructions. Well, that's ---- I mean, why send out ---- if you understand the instructions, why send out a question? Somebody didn't understand something or they would have returned a verdict. Instead, they sent out jury instructions. And remember that also that the ---- this was a jury who sent out ---- who requested prior to this, during the three and a half days of deliberations before these questions, they requested readback of day one, the testimony related to Mr. Jackson's beating of Jose. And the second day, they requested the readback of the instruction of the art of the testimony related to whether he was involved in the beating of Julio. And then they come back with this question about natural and probable consequences. Now, right, there's lots of ways to interpret that, but at least one, and I think the overriding one, is that at least one juror, and probably more, but at least one juror did not believe the testimony that he was involved in the beating, in the direct beating of Julio. And remember, he also testified. He testified for days. And it may be that the jury found him quite believable. So we could, if there's more questions, I appreciate all the time I was given. If there's more questions, I'm happy to address them.  Thank you, counsel. Jackson v. Hall will be submitted. We're taking it.
judges: Brewster, Trott, Wardlaw